DAVIS, Judge,
concurring:
The critical question before the Court in this case is what did Congress intend when drafting the language contained in 38 U.S.C. § 1513(a). The plain language is inexact and unclear. Contrary to the dissent’s assertion, the answer, ultimately, is that Congress’s intent is ambiguous and that ambiguity must be resolved in favor of the veteran. Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552 (1994).
Section 1513(a) provides:
(a) The Secretary shall pay to each veteran of a period of war who is 65 years of age or older and who meets the service requirements of section 1521 of this title [38 USCS § 1521] (as prescribed in subsection (j) of that section) pension at the rates prescribed by section 1521 of this title[38 USCS § 1521] and under the conditions (other than the permanent and total disability requirement) applicable to the pension paid under that section.
(emphasis added).
The “total and permanent disability” language only appears in two places in section 1521. It first appears in section 1521(a). There it takes the form of “... [a]nd who is permanently and totally disabled.” It next appears in section 1521(e). In section 1521(e) it takes the form of “If the veteran has a disability rated as total and permanent.”
Thus, the question becomes: In enacting section 1513, did Congress intend to exclude the language only contained in section 1521(a) or did it also intend to exclude similar language found in section 1521(e)? The majority of this Court, following earlier precedent in Hartness v. Nicholson, 20 Vet.App. 216 (2006), concluded that because the plain, and inexact, language of section 1513(a) is ambiguous, the exclusion should apply to both sections in which references to a permanent and total disability appears. The dissent on the other hand, says that because section 1513(a) uses the specific language “other than the permanent and total disability require *32 ment” rather than “a disability rated as permanent and total,” Congress therefore intended only to exclude the permanent and total disability requirement from paragraph 1521(a), what the dissent characterizes as the threshold requirement for receiving the pension benefits. Under the dissent’s interpretation of the statute, even though Mr. Chandler has reached 65 years old, he would not be entitled to a higher pension payment because he is already receiving a non-service connected pension under section 1521 based on a disability. These two opposite interpretations illustrate that the statutory language is, in fact, ambiguous.
In determining legislative intent, Courts often examine the legislative history of the statute. In 2001, Congress enacted 38 U.S.C. § 1513, awarding non-service-connected pension without regard to disability for veterans 65 years of age and older who met the service requirements of having served 90 days or more during a time of war. Veterans Education and Benefits Expansion Act of 2001, Pub.L. 107-103, U.S.C.C.A.N. (115 Stat.) 991. The legislative history of § 1513 is sparse. While Congress clearly intended § 1513 to be interpreted in conjunction with 38 U.S.C. § 1521, Congress did not specifically explain their interplay. This Court specifically noted the resulting ambiguity in footnote 2 of the Hartness decision. Footnote 2 provides:
We also note that in section 1521 Congress distinguishes between a veteran “who is permanently and totally disabled,” 38 U.S.C. § 1521(a), and a veteran who has “a disability rated as permanent and total,” 38 U.S.C. § 1521(e). However, because Congress did not make that distinction in the section 1513 statutory language excluding the permanent-and-total-disability requirement, here we apply section 1513 to section 1521(a) and (e).
20 Vet.App. at 221. Thus, the Hartness panel struggled with the same statutory interpretive issue as we do again in Chandler, and resolved that ambiguity in a light most favorable to the veteran as required by Gardner.
The history of § 1521 dates back to 1958, when Congress first passed a law entitling veterans of World War I, World War II, or the Korean conflict to a monthly pension provided they had served for ninety days or more during those respective times, and were permanently and totally disabled from a non-service-connected disability not the result of their own misconduct. Pub.L. 85-857, U.S.C.C.A.N. (72 Stat.) 1136. In that same Act, Congress provided pensions for veterans of the Civil War, Indian War, and Spanish-American War; however, veterans of those wars did not have to fulfill a disability requirement to qualify for a pension, only an income requirement.
In 1967, Congress decided that it would presume that all veterans age 65 or older were permanently and totally disabled and qualified to receive a non-service-connected disability pension, apparently in an effort to ensure elderly wartime veterans received economic assistance even if they were not disabled. Veterans’ Pension and Readjustment Assistance Act of 1967, Pub.L. 90-77, U.S.C.C.A.N. (81 Stat.) 178. Congress repealed that presumption in 1990, leaving the current statutory structure. Omnibus Budget Reconciliation Act of 1990, Publ.L. 101-508, U.S.C.C.A.N. (104 Stat.) 1388. It is logical that Congress intended that disabled wartime veterans would receive a higher pension amount than non-disabled wartime veterans, resulting in the various categories established in § 1521(b) through (g).
As §§ 1513 and 1521 are currently written, Congress has left much up to the *33 Court’s interpretation with little guidance. The factual circumstances of Hartness, and the Court’s obligation to resolve ambiguity in favor of the veteran, resulted in the conclusion that § 1513(a) excluded the disability requirement contained in § 1521(a) and (e). A common sense reading of the statutory structure makes two things clear. First, pursuant to section 1513(a), Congress determined that an older veteran who has served for ninety consecutive days in a time of war is entitled to a pension payment by virtue of age and service. Second, pursuant to the provisions contained in section 1521(b) through (g), based on the veteran’s individual circumstances, the veteran receives pension payments that vary depending on the veteran’s marital status, whether or not the veteran is supporting children and whether or not the veteran has certain levels of disability.
While neither the position of the majority nor that of the dissent is unreasonable, this is a classic example of the plague of veterans law —that is— too often statutes and regulations are unclear and ambiguous, and lack legislative history from which intent may be derived. In such circumstances, I agree wholeheartedly with my colleagues in the majority that ambiguity must be resolved in the light most favorable to the veteran. Gardner, supra. Were this Court to overrule Hartness, as the dissent requests, we would be offering yet another interpretation of what we think Congress may have meant, and a potentially disparate treatment of veterans similarly situated as the majority points out.
Moreover, the kind of ambiguity that disrupts the fluid operation of this statutory provision begs for a legislative fix, which I understand, may be currently pending on Capitol Hill. Veterans’ Benefit Enhancement Act of 2009, S. 728, 111th Cong. § 202. Whether or not Congress ultimately addresses the legislative ambiguity extant here, it is not the province of this Court to draft corrective legislation disguised as an opinion.